**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3668-20

IN THE MATTER TO REVOKE,
CANCEL, OR SUSPEND THE
PERMANENT REGISTRATION
OF ROBERT WARD BECKER
 (A-17729)

_____

Submitted June 2, 2022 – Decided June 20, 2022

Before Judges Mawla and Mitterhoff.

On appeal from the Waterfront Commission of New York Harbor, RL-5381.

George T. Daggett attorney for appellant Robert Ward Becker.

Waterfront Commission of New York Harbor, attorneys for respondent Waterfront Commission of New York Harbor (Phoebe S. Sorial, on the brief).

PER CURIAM

Appellant Robert Ward Becker appeals from a July 26, 2021 order of the

Waterfront Commission of New York Harbor (Commission) denying his

petition to reconsider the Commission's July 12, 2021 decision to revoke his

registration to work as a maintenance man in the port of New York-New Jersey. We affirm.

We discern the following facts from the record. On December 11, 2019, the Commission charged Becker with eight separate offenses, including: engaging in a price-tag-switching scheme at the Target in Riverdale on four separate occasions in November 2016; operating a motor vehicle while under the influence of Alprazolam (Xanax) on February 20, 2017; abusing his Xanax prescription on a regular basis between September 11, 2016 and February 20, 2017; and violating section 1.11 of the Rules and Regulations of the Waterfront Commission by failing to notify the Commission within twenty days of his November 27, 2016 arrest for shoplifting at Target and failing to notify the Commission within twenty days of his February 21, 2017 arrest for assault by automobile, driving while intoxicated, and reckless driving. These charges stemmed from two prior Article IV interviews. See generally N.J.S.A. 32:23-10.

On April 27, 2021, the Administrative Law Judge (ALJ) held a virtual hearing. The Commission called Ryan Nordlander who worked for the Target security department in Riverdale from 2014 until 2017. Nordlander testified about his investigation into Becker's price-tag-swapping scheme as part of his

duties to prevent and investigate thefts. Becker would use a razor blade to take bar codes from inexpensive items, place them on more expensive items, and then proceed to the self-checkout counter with the intention of paying the lower price point for the items.

Becker also testified at the hearing. He testified about how the death of his friend on September 11, 2016, caused him to fall into a deep depression and led to his substance abuse. Becker also testified that his depression and substance abuse caused financial and marital problems, which in turn led to his two arrests. He stated the charges from the arrests were eventually dismissed. He also explained that after the car accident on February 20, 2017, he turned his life around and resolved his marital and financial issues. Becker did not contest the Commission's charges and admitted to committing the offenses.

On cross-examination, Becker admitted to lying to the Commission about the prior Target instances and his Xanax abuse during his Article IV interviews, despite having promised to tell the truth and being in a "better place." He explained that he lied because he "was humiliated."

On June 10, 2021, the ALJ filed his report and recommendation to the Commission. After summarizing the charges, the evidence produced at the administrative hearing, and the relevant law, the ALJ found that the Commission

had established all the charges alleged against Becker by a clear preponderance of the evidence. Moving to his recommendation, the ALJ first commended Becker for turning around his life. The ALJ was sympathetic to the tragedy Becker suffered and believed Becker deserved compassion, especially since he had no other history of misconduct or disciplinary actions at the Waterfront. The ALJ noted "[a]s a person who believes in redemption and second chances, I would not have suspended or revoked [Becker's] inclusion in the Longshoreman's Register."

Although the ALJ wrote positively about Becker, he continued by saying, "[t]he matter could have ended there. But it does not. During his Article IV interviews, when [Becker] was undeniably in a 'better place,' he consciously chose to lie to the Commission about his past difficulties." The ALJ then stated:

> The foregoing litany of [Becker's] lies, evasion, and inconsistencies demonstrates that [Becker] lacks the integrity and honesty that is vital to the fundamental operations of the Waterfront, and thus threatens its public peace and safety. While [Becker] should be given a second chance for the missteps taken as a result of his best friend's death, he cannot be excused for not telling the complete truth of what transpired. Equally significant, he testified both at the Article IV interviews and at the hearing that he understood the importance of telling the truth. A person loses the right to redemption and second chance by failing to be honest. Indeed, [Becker's] perpetual lack of honesty under oath further undermines his story of grief and substance abuse to the

4

point where [Becker's] sincerity and credibility must be questioned. As the legal adage goes, "He who seeks equity must come with clean hands."

Based on his findings, the ALJ recommended that Becker's inclusion in the Longshoreman's Register be permanently revoked.

On July 12, 2021, the Commission determined that Becker committed the eight offenses he was charged with. Accordingly, the Commission revoked Becker's permanent registration as a maintenance man, effective immediately.

On July 19, 2021, Becker filed a petition for reconsideration with the Commission, arguing its decision was contradictory to the ALJ's recommendation. On July 26, 2021, the Commission denied Becker's petition for reconsideration. This appeal followed.

On appeal, Becker presents the following argument:

POINT I

THE COMMISSION'S ACTIONS ARE INCONSISTENT WITH N.J.S.A. 52:14(B)-10(C).

Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). The Commission has substantial prerogatives and expertise in assuring the integrity and public safety at our piers and in the harbor itself. See Knoble v. Waterfront Comm'n of N.Y. Harbor, 67 N.J. 427, 430-31 (1975); In re Kaiser, 94 N.J. Super. 95, 99 (App.

Div. 1967).  More generally, in the review of licensure and penalty actions by administrative agencies, we accord substantial deference to, and do not ordinarily second-guess, the agency's decision, unless it is "arbitrary, capricious, or unreasonable[,] or it is not supported by substantial credible evidence in the record as a whole."  Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980).  When presented on appeal with a claim that the sanction imposed is excessive, the court must uphold the sanction unless it is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness."  Herrmann, 192 N.J. at 28-29 (quoting In re Polk, 90 N.J. 550, 578 (1982)).  The court "can interpose its views only where it is satisfied that the agency has mistakenly exercised its discretion or misperceived its own statutory authority."  Polk, 90 N.J. at 578.

Guided by these principles, we reject Becker's argument, as it has no merit.  Becker's claim that the ALJ dismissed the eight charges against him and ultimately found that Becker's registration should not be revoked is based on an incorrect reading of the ALJ's report.  Despite writing positively about Becker, the ALJ unequivocally found that the Commission established by a clear preponderance of the evidence all the charges alleged against Becker and recommended Becker's registration be revoked because his behavior threatened

the Waterfront's public peace and safety. The Commission did not ignore the ALJ's findings, but rather abided by his report in its determination that Becker committed the eight offenses and in its decision to permanently revoke Becker's registration. The Commission's decision was not arbitrary, capricious, or unreasonable and was not so disproportionate that it shocks the conscience or one's sense of fairness, especially since during the administrative hearing Becker did not contest the charges and admitted to lying during his Article IV interviews. We discern no basis to disturb the Commission's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3668-20